A11A0680. BARNA LOG HOMES OF GEORGIA, INC.
v. WISCHMANN.
(714 SE2d 402)

DOYLE, Judge.

Barna Log Homes of Georgia, Inc. ("Barna"), filed an action against Randy Wischmann alleging claims for breach of contract and libel. Wischmann filed a motion to dismiss or, alternatively, motion for summary judgment, which the trial court treated as a motion for summary judgment and granted as to Barna's libel claims.[1] Barna now appeals the trial court's grant of partial summary judgment, and we affirm for the reasons that follow.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that Barna is a distributer of manufactured log home packages built by Barna Log Homes, LLC. In June 2006, Wischmann entered into a contract with Barna to purchase a log home package. In October 2007, Wischmann cancelled the home contract and offered to purchase a log siding package. Thereafter, Wischmann cancelled the siding contract.

During this time, Wischmann made two written statements regarding his experience dealing with Barna, which are the subject of Barna's libel claims. The first statement was a post made on a website on October 23, 2007, and the second was an e-mail written by Wischmann and addressed to Jason Smith of the Mountain Creek Hollow Homeowners' Association (representing the community in which Wischmann's intended home would be built). The website posting, which Wischmann made to the section of the website in which customers may post reviews and ratings about various companies providing services related to log homes, was titled "Caution to

---

[1] Barna's breach of contract claim remains pending in the trial court and is not subject to the instant appeal.

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

New Build" and stated:

> No problem with Barna directly, but the distributor, Barna Log Homes of GA, was grossly overcharging for the materials and did a poor job on the engineering overview and window specifications. Luckily, my builder caught the problems before we were too far along. Very surprised by the situation because the local distributor had a great reputation with everyone I talked to and I like the owner. In my meetings with him, I felt that I was being well taken care of but when we got to the details it was not the case. Very disappointed.

Wischmann provided a rating of 1.5 out of 5 points with his review.

The e-mail from Wischmann was five paragraphs long and described the state of construction on his lot. Wischmann explained that he was originally working with Barna, but he cancelled his agreement with them, explaining some of the reasons for that decision. First, Wischmann explained that "[w]ith the housing recession going on, I asked [Barna] to give me some relief on the basic building materials." Wischmann contended that his builder investigated the local costs for certain building items and found that "[Barna] was basically doubling the cost." Wischmann stated that "[i]n [his] business experience, a distributor that does not handle or inventory materials gets 5-10% mark up. [Barna] was charging 100%. . . . I will end up saving between $40-50,000 on the material cost alone."

Wischmann continued, explaining that his builder was "concerned about some items" and therefore had "the structural engineering" of the plans checked by a third party. Wischmann stated that it

> [t]urns out th[at] Barna had significantly undersized some of the load bearing structure[,] and we have had to add additional laminated wood beams and support posts. [The representative from Barna] assured me that [Barna] had checked the engineering and everything was sound, but I don't think it was done.

Wischmann also explained that he originally ordered aluminum clad windows and doors through Barna, but contended that "they were doing a very sloppy job[,] which would have resulted[ ] in major mistakes[ ] if we had continued with them. It would have been a significant cost overrun because of errors." Wischmann stated that

> my builder, the window supplier[,] and I am stunned at the

quality of work and support from [Barna]. All of us had a very high opinion of [the company] prior to this[,] and it is a huge disappointment. Since this was my first home building experience, I was expecting, and [Barna] assured me that I would get complete oversight with him. Between my builder and [Barna], everything would be taken care of. It probably would have too, but at a much higher cost than I was budgeting for and expecting. I am guessing that my final cost will be about $325,000 vers[u]s $400,000 if I would have stayed with Barna.

Wischmann concluded the e-mail by praising the work of his builder to keep costs low on materials while still providing a high quality product.

1. Barna contends that the trial court erred by finding that the website post and the e-mail constituted statements of opinion and denying its libel claims as a matter of law.

A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule. As to proof of malice, proof that the writing is false, and that it maligns the private character or mercantile standing of another, is itself evidence of legal malice.[3]

(a) *The e-mail.*

The trial court correctly determined that Wischmann's e-mail was not libelous as a matter of law. Wischmann recites a number of factual statements regarding the structural engineering, window and door sizing, and material costs, which could be disputed by Barna. Nevertheless, Barna failed to present any evidence to the trial court that those statements were not true.[4] On the other hand, Wischmann presented the affidavit of Mark Chitty in support of the factual statements he made in the e-mail. Moreover, the remainder of Wischmann's statements that could be seen as disparaging consti-tute Wischmann's opinions regarding the service he received from Barna — Barna's work ordering windows and doors was "sloppy," he was "stunned" with the quality of work and support, and he was "disappoint[ed]" in the service. These statements are based on the

---

[3] (Punctuation and footnote omitted.) *Lucas v. Crenshaw*, 289 Ga. App. 510, 512 (1) (659 SE2d 612) (2008).

[4] See id. at 512 (1); *Davis v. Sherwin-Williams Co.*, 242 Ga. App. 907, 908 (531 SE2d 764) (2000).

facts within the e-mail, which Barna has not disputed with contrary facts, and which are opinions largely derived from the costs differences cited within the e-mail — Barna would have taken care of everything, but for a higher cost than Wischmann would pay without using them.[5]

(b) *The website post.*

The trial court also properly granted summary judgment to Wischmann on Barna's claims that the website post constituted libel. Wischmann's statements that Barna was "grossly overcharging" and "did a poor job on the engineering overview and window specifications" are his opinions of those matters based on his experience working with Barna, which are subjective and not capable of proof or disproof.[6] Unlike the e-mail, the website post does not contain any factual statements and would not be taken by any reader as anything other than the wholly subjective opinion of one customer.

2. Finally, neither the e-mail nor website post constitute libel per se, even though they constitute statements related to Barna's trade.[7] Although statements disparaging a business' reputation within its trade may sometimes constitute libel per se,

[l]anguage imputing to a business or professional man ignorance or mistake on a single occasion and not accusing him of general ignorance or lack of skill is not actionable per se. This is because a charge that plaintiff in a single instance was guilty of a mistake, impropriety or other unprofessional conduct does not imply that he is generally unfit.[8]

Here, Wischmann's statements indicate that he thought Barna's performance with respect to his project was "sloppy" and would have resulted in "added expense." Nothing in either of the statements impugned Barna's general business character or capability, and

---

[5] See *Lucas*, 289 Ga. App. at 514 (1); *Davis*, 242 Ga. App. at 908; *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890-891 (520 SE2d 721) (1999) (customer's statement that she had been "ripped off" was not defamatory because the facts that premised her opinion were revealed in the broadcast and were not defamatory).

[6] See *Bergen v. Martindale-Hubbell, Inc.*, 176 Ga. App. 745, 746-747 (3) (337 SE2d 770) (1985) (affirming the grant of a motion on the pleadings for libel based on the defendant publication's rating of an attorney).

[7] See OCGA § 51-5-4 (a) (3); *Lucas*, 289 Ga. App. at 515 (2).

[8] (Punctuation omitted.) *Lucas*, 289 Ga. App. at 515-516 (2). See also *Crown Andersen, Inc. v. Ga. Gulf Corp.*, 251 Ga. App. 551, 554 (2) (554 SE2d 518) (2001). Compare with *American Southern Ins. Group v. Goldstein*, 291 Ga. App. 1, 13-14 (7) (b) (660 SE2d 810) (2008) (explaining the difference between a statement that imputes a tradesman's general reputation and therefore is not barred by the single-instance rule and a statement that alleges merely an act of negligence, mistake, or ignorance on a single occasion).

indeed, Wischmann refers to Barna's highly regarded reputation within the community generally in both statements.

Accordingly, we affirm the trial court's grant of summary judgment to Wischmann as to Barna's libel claims.

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 13, 2011 — 

*Clifford S. Lancey*, for appellant.

*Groth & Makarenko, Paul L. Groth, Laura D. Johnson*, for appellee.

